UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(West Palm Beach)

CASE NO. 18-CV-80596-DMM

PALM BEACH MARITIME MUSEUM, INC., etc.

    Plaintiff,

vs.

HAPOALIM SECURITIES USA, INC.,
a foreign corporation, EDWARD CHAN,
PATRICIA AGUIAR, FABIO D'ASCOLA,
and BILL BURCKHART,

    Defendants.

_____

**DEFENDANT HAPOALIM SECURITIES USA, INC.'S REPLY
IN FURTHER SUPPORT OF ITS MOTION TO TRANSFER**

Defendant Hapoalim Securities USA, Inc. ("**HSU**"), through its undersigned counsel, hereby files its reply memorandum of law in further support of its Amended Motion to Transfer this matter to the United States District Court for the Southern District of New York ("**SDNY**") pursuant to 28 U.S.C. § 1404(a).[1]

## I.    INTRODUCTION

In the Transfer Motion, HSU set forth its clear right to litigate this dispute in the agreed forum in which the parties contracted. Contrary to PBMM's contention, HSU's enforcement of the agreed terms in the Parties' unambiguous agreement which requires disputes between the parties to be litigated in New York is hardly "running from this Court." PBMM does not (and cannot) dispute that the Engagement Letter contains a mandatory forum for all disputes, or that the later executed BPA does not contain a forum selection clause. Rather, PBMM argues that the

---

[1] All capitalized terms assume the definition in the Amended Motion to Transfer ("Transfer Motion") [DE 9] and all emphasis is added, unless otherwise noted.

Court should ignore the forum selection clause because the BPA somehow effected a novation of the Engagement Letter.

PBMM's argument is not substantiated by the applicable law which finds novation only where it is clear from the second agreement (by an explicit or implicit statement) that the parties intended to revoke the first agreement. Here, as set forth below, PBMM has failed to demonstrate any such intent. Accordingly, the Forum Selection Clause in the Engagement Letter remains in full force and effect.

PBMM's alternative discussion of the forum selection factors is misplaced. Because no other defendant has been served, the only private interests to be considered on this Transfer Motion are those of HSU and PBMM. Since PBMM contracted that interest away via the Forum-Selection Clause, the only interests this Court must consider on the Transfer Motion are those of the public. As PBMM has not met its burden of showing that the public interest factors overwhelmingly favor retention of jurisdiction in S.D. Fla., this Court should transfer this matter to the SDNY, pursuant to 28 U.S.C. § 1404(a).

### A. The Engagement Letter, And The Forum-Selection Clause Contained Therein, Was Not Novated By The BPA

Finding virtually no support for its argument in Florida, PBMM instead largely relies on cases applying the law of other states to support its argument that the BPA served as a novation of the Engagement Letter and the Forum-Selection Clause therein. But the cases are clear – to establish novation, PBMM bears the burden on each of the following requirements: "(1) a previously valid contract; (2) **agreement of the parties to cancel that contract**; (3) a new valid and binding contract; (4) **agreement of the parties that the new contract will replace and extinguish the old one**." *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1237 (11th Cir. 2008) (emphasis added). "Novation results not from the mere substitution of one writing for another, but only from the substitution of a new obligation for another with intent to extinguish

2

the old." *Audiology Distribution, LLC v. Simmons*, No. 8:12-cv-02427-JDW, 2014 WL 7672536, at *13 (M.D. Fla. May 27, 2014). Whether a novation occurs "is controlled by the intention of the parties … [a]nd the burden of proving a novation is on the party who asserts it." *Id*. *Audiology Distribution,* 2014 WL 7672536, at *13 (stating that "'a clear agreement or manifestation of intention of both parties to [effectuate a novation] is essential'") (citations omitted). PBMM fails on the highlighted elements, numbers 2 and 4 above.

      i.   *The parties did not intend for the BPA to cancel or replace the Engagement Letter*

Unlike the Engagement Letter, the BPA is silent with respect to choice of forum and does not contain the broad "supersedes all oral statements and prior writings with respect thereto" merger clause held sufficient to swallow the Engagement Letter. PBMM instead argues that "magical language" is not necessary, relying upon an inapposite series of cases containing various forms of express repudiations of an earlier agreement in favor of a later agreement, or term repugnancies, none of which exist in the BPA.

For example, in *Sink v. Abitibi-Price Sales Corp.*, 602 So. 2d 1313 (Fla. 4th DCA 1992), the parties entered into a management agreement in October 1989, followed by a termination agreement in March 1990. Under the termination agreement, plaintiff was entitled to a severance payment. Nevertheless, defendant cancelled the severance check, claiming they had "learned" that they could have terminated plaintiff for cause under the management agreement. *Id.* at 1315. Finding that the parties intended to extinguish the management agreement since they instructed their attorneys to draft a "**termination contract**" which contained a release of claims, the Court determined that the termination agreement was a novation of the management agreement and defendant was entitled to his severance. *Id.* at 1316.

In *Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014), plaintiff, while employed by RBC, first signed the RBC Agreement which required arbitration, but also provided RBC or a

3

successor had the right to change "any part or parts of the Agreement" and, if a new agreement was issued, "the most current version of the agreement supersedes all prior versions and will at all times govern." *Id.* at 1117.  Later, PNC Bank acquired RBC, and plaintiff signed the PNC Agreement, which had no arbitration provision.  Since the express provisions of the first agreement said the most current version supersedes all prior versions, the court found that by issuing a new agreement, the parties "expressed [their] **clear and definite intent** to execute a new contract to supersede" the RBC Agreement. (emphasis added). *Id.* at 1117-118.[2]

While those cases provide little guidance, more to the point are cases such as *Audiology Distribution,* 2014 WL 7672536, at *13, where the Court rejected novation, finding that there was "no clear manifestation of mutual intention to effectuate a novation of the" earlier agreement where the latter agreement "does not mention" the earlier agreement and does not "unambiguously preclude the application of prior contracts on the same subject."  The Court explained that even where present, "[t]he presence of a merger clause … is not conclusive proof of intent to effectuate a novation" and that merger clauses only "generally work[] to prevent a party from introducing parol evidence to vary or contradict the written terms." *Id.* at *14.  It is

---

[2] *See also Civil Ag Group v. Octaform Systems, Inc.*, 267 F. Supp. 3d 1112, 1117 (D. Minn. 2017) (finding forum-selection clause in original agreement superseded by novation where the parties entered into an "**express settlement of the dispute**" since "[n]o aspect of the Settlement Agreement suggests that the parties intended that [defendant] would retain the right to enforce the forum-selection clause in the terms and conditions while simultaneously securing a release from liability"); *Esys Latin America, Inc. v. Intel Corp.*, 925 F. Supp. 2d 1306, 1313 (S.D. Fla 2013) (non-disclosure provision in agreement inapplicable where an amendment thereto "**explicitly indicates**" that the non-disclosure agreement would only remain in effect between the assignor and defendant); *Aronowitz v. Health-Chem Corp.*, 513 F. 3d 1229, 1237 (11th Cir. 2008) (holding that because 2003 contract provides that it "**terminate[s] all obligations and stipulations** of the [prior 2002] contract… the parties **intended to extinguish** the 2002 contract."); *Dottore v. Huntington Nat'l Bank*, 480 F. App'x 351, 353 (6th Cir. 2012) (holding under Ohio law that where account agreement required arbitration, but a later document which contained new terms and conditions that "**govern the operation** of this account," did not contain an agreement to arbitrate, the later agreement "is complete and unambiguous on its face and **evidences the parties' intent** for the account to be governed by this document" and thus arbitration was not compelled).

4

only if the merger clause "unambiguously intend[s] … to replace" all prior agreements that it will operate as a novation.  *Id.* at *15.

Another example from the Eleventh Circuit is *Navarette v. Silversea Cruises Ltd.*, 620 Fed App'x. 793 (11th Cir. 2015), involving two employment-related agreements involving a seaman.  The first was a May employment contract with the ship owner, which contained an arbitration clause.  The second, the following June, was between the seaman and a crew agency, setting forth additional details of his employment on the ship, which did not contain an arbitration provision.  *Id.* at 796. The Court found that the July contract was not a novation of the May contract since it did not "contain[] any language, express or clearly implied, which demonstrated the parties' intent to extinguish the [May contract]." *Id.* at 797. Further, the Court found it notable that "parties to the [May contract and July contract] are not identical, which necessarily negates the requirement that the parties intended to extinguish the original document." *Id.* at 797.

Here, nowhere in the tri-partite BPA is there an express (or even implied) repudiation of the two-party Engagement Letter.  Indeed, the BPA is not: (i) a "termination contract" and release as in *Sink*; (ii) a reflection of "clear and definite intent" to supersede the Engagement Letter as in *Dasher*; or (iii) an "express settlement" of a dispute with respect to the Engagement Letter as in *Civil Ag Group*.  It does not: (i) "expressly indicate" that it controls over the Engagement Letter as in *Esys Latin America*; (ii) "terminate all obligations" of the Engagement Letter as in *Aronowitz*; or (iii) "govern the operation" of the parties' relationship as in *Dottore*. Rather, as in *Audiology Distribution* and *Navarette*, the BPA does not: (i) mention the Engagement Letter; (ii) unambiguously preclude application of the Engagement Letter; (iii) contain a merger clause that unambiguously intends to replace the Engagement Letter; or (iv) contain any language of intent to extinguish the Engagement Letter.  Notably, the Engagement

5

Letter and BPA are between different parties: the Engagement Letter is between HSU and PBMM while the BPA is between HSU, PBMM *and* the Public Finance Authority of the State of Wisconsin, the actual bond issuer.

PBMM is left with arguing that the intention to supersede the Engagement Letter is somehow found in §1 of the BPA, which states that "[HSU's] duties and obligations to the [Public Finance Authority] and [PBMM] shall be limited to those contractual duties and obligations set forth in this [BPA]."  That argument fails to evidence the required intent because it has nothing to do with HSU's rights under the Engagement Letter to enforce the Forum-Selection Clause, nor does it have anything to do with PBMM's duties and obligations under the Engagement Letter or BPA, including the obligation to litigate disputes in the proper forum.  Thus, the BPA does not establish any intention to replace the Engagement Letter with the BPA.

        *ii.*    The merger clause in the BPA is not an express novation of the Engagement Letter

As demonstrated, under the applicable law, the merger clause of the BPA is insufficient to constitute an express novation of the Engagement Letter.  Indeed, while the merger clause of the Engagement Letter entered into between HSU and PBMM provides that it "…supersedes all oral statements and prior writings" (§10), the "merger clause" in the tri-party BPA (§17) only states "**Entire Agreement**. This Purchase Agreement when accepted by the Borrower [PBMM] and the Issuer [Public Finance Authority] . . . shall constitute the entire agreement between us [PBMM, HSU & Public Finance Authority]."

PBMM's attempt to distinguish the ineffectiveness of the merger clause in the BPA from those in the cases cited by HSU based on imagined fact differences is unavailing.  PBMM argues that in *Fin-S Tech, LLC v. Surf Hardware Int'l-USA, Inc.*, No.: 13-CV-80645, 2014 WL 12461349, at *6 (S.D. Fla. Jan. 7, 2014), the court held that "a merger clause in a License Agreement was not sufficiently broad to replace the obligations in a non-disclosure agreement,

[because it] covered a **different subject matter** from the License Agreement." [DE 17 at 9] (emphasis added). In fact, the merger clause in the License Agreement provided, "This Agreement sets forth the entire understanding of the parties **relating to the subject matter** here of…" *Fin-S Tech, LLC,* 2014 WL 12461349, at *3.

PBMM's attempt to distinguish *MCC Mgmt. of Naples, Inc. v. Int'l Bancshares Corp.*, No. 2:06-cv-571-FtM-29SPC, 2007 U.S. Dist. LEXIS 36216 (M.D. Fla. May 17, 2007) fares no better and actually proves HSU's point. PBMM argues that the forum selection clause in the last-entered agreement was only applicable because the latest agreement "explicitly provides that it 'supersedes all prior agreements and commitments…'" [DE 17 at 10] (citing *MCC Mgmt*). HSU agrees, but there is no such superseding language in the merger clause in the BPA.[3]

Accordingly, because the parties are not identical and the Engagement Letter was not superseded by the BPA, the Forum-Selection Clause of the Engagement Letter remains in full force and effect and the private interests of PBMM should not be considered in evaluating whether to transfer this matter to New York. *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. Of Texas*, 571 U.S. 49, 59 (2013).

> iii. *There is no repugnancy between the Engagement Letter and BPA*.

PBMM also relies on cases that stand for the proposition that "[i]f there is a plain repugnancy between the provision of an original contract and those of a supplemental one between the **same parties** and relating to the same subject matter, the earlier contract must yield to the later **as far as the repugnancy extends**." *Brink v. Bank of Am.*, N.A., 811 So. 2d 751, 752

---

[3] PBMM's arguments as to *A&E Television Networks, LLC v. Pivot Point Entm't LLC*, No. 10 Civ. 09422, 2013 WL 1245453, at *11 (S.D.N.Y. March 27, 2013) also fails since there is no "definitive language indicating [that the BPA] revokes, cancels, or supersedes" the Engagement Letter.

(Fla. Dist. Ct. App. 1st 2002) (emphasis added).  The cases are inapposite because the BPA and Engagement Letter include different parties, and there is no repugnancy.

A review of the cases cited by PBMM confirms novation was found only where the terms of an earlier and later agreement were contradictory and could not be reconciled.  For example, in *Kenney v. Vandiver*, 414 So. 2d 237, 238 (Fla. 4th DCA 1982), a legal services agreement provided the lawyer's fee would not exceed $10,000, but a later agreement provided that the client would pay $65.00 per hour for future legal services and $8,325 for past legal services.  Those facts caused the court to find the effect of the later agreement "was to make inapplicable the bargain between the parties … at the onset of the initial employment [and] … started 'a whole new ball game.'"  *Id.* at 239.

Likewise, in *Brink*, 811 So. 2d at 752, a former CEO claimed certain benefits upon termination pursuant to his original employment agreement; however, a later agreement provided he could only get the benefits if he was employed as of December 31, 2000 (he wasn't).  Unremarkably, the Court held that the later provision "**expressly contradicts**" the specific language" in the original agreement, and, as a result, the later agreement controlled.  *Id.* at 752.[4]

Here, the BPA did not "start a whole new ball game" or "expressly contradict" the Engagement Letter.  Indeed, PBMM confirms as much: "the [BPA] (23 pages), provides a more comprehensive discussion of the parties' rights and obligations with respect to the bonds than the [Engagement Letter] (7 pages)." [DE 17 at 7].  Nor does the BPA's silence with respect to forum selection create a repugnancy or conflict with the Engagement Letter. *See, e.g., Kendall Imports, LLC v. Diaz*, 215 So. 3d 95, 107 (Fla. 3d DCA 2017) (finding that where financing agreement

---

[4] The only contradictory language identified by PBMM is that the BPA applies Florida law and the Engagement Letter applies New York law. [DE 17 at 8].  But, as argued by PBMM, the earlier contract only yields to the later contract "as far as the repugnancy extends." [DE 17 at 5 (citing Brink, 811 So. 2d at 752)].

expressly barred class actions, and purchase order was "silent as to class actions," "then under both documents, class actions are not permitted" since there was not an "irreconcilable conflict"); *Georgia Tasman, LLC v. Eisner*, 648 F. App'x 846, 848 (11th Cir. 2016) (no conflict as to required notice provisions in the Security Deeds and the Note where one is silent on the required notice and, because no conflict, written notice requirement applied); *see also Baraliu v. Vinya Capital, L.P.*, No. 306CV1286AVC, 2007 WL 1346918, at *3 (D. Conn. May 7, 2007) (forum selection clause in the original agreement remains in effect, despite any lack of reference or any mention of the forum selection clause in the amended agreement). Lacking any repugnancy between the BPA and Engagement Letter on forum selection, the mandatory provision in the Engagement Letter applies,

        **B.**      <u>**The Public Interest Favors Do Not Overwhelmingly Disfavor Transfer**</u>.

In arguing that the public interest factors favor Florida over New York, PBMM ignores the high burden it must overcome. Indeed, the Supreme Court has made clear that "[i]n all but the most unusual cases … 'the interest of justice' is served by holding parties to their bargain" when a valid forum-selection clause is involved." *Atl. Marine*, 571 U.S. at 66 (quoting 28 U.S.C. § 1404(a)). PBMM has not identified any facts that make this dispute "most unusual."

Instead, PBMM argues that this Court should retain jurisdiction because Federal Courts in New York are busier than Federal Courts in Florida. [DE 17 at 12]; *see also Atl. Marine*, 134 S. Ct. 568, 582 (identifying one of the public interest factors to be considered as "the administrative difficulties flowing from court congestion"). But PBMM does not point to any evidence of administrative difficulties in the SDNY, other than that there are more pending cases per judge. Apart from the court's finding "this factor generally does not warrant significant consideration," judges in the S.D. Fla have transferred cases to other jurisdictions because, *inter*

*alia*, it "has one of the busiest dockets in the country." *Beaman v. Maco Cabe, Inc.*, 790 F. Supp. 2d 1371, 1379 (SD Fla. 2011).

PBMM also argues that because the BPA chooses Florida law, this factor favors Florida as the proper venue. This is not a diversity action, so this factor should not even be considered. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6. (1981)[5]

Finally, PBMM argues, without citation, that Florida is the proper forum because a Florida jury should resolve a dispute that allegedly arose in Florida. [DE 17 at 13.] A New York jury has an equivalent interest in hearing this dispute as HSU's principal place of business is in New York. [DE 1, ¶ 10.] As such, PBMM has not come close to overcoming its high burden of proving that the public interest factors overwhelmingly favor resolution of this action in the S.D. Fla.[6]

## II.   CONCLUSION

For the reasons set forth above and in the moving papers, the Court should transfer this case to the SDNY pursuant to 28 U.S.C. § 1404(a), and grant such other relief as the Court may deem just and proper.

---

[5] PBMM contends that "it is worth noting that with respect to the conflicting choice of law provision in the [Engagement Letter and BPA], HSU concedes that the Court must decide what law applies, but when evaluating the conflict between the contracts with respect to the forum selection provision it does not make the same concession and instead posts that the Court must conclude that the [Engagement Letter] prevails." [DE 17 at 13.] This is another red herring. There is no conflict with respect to forum selection clauses in the Engagement Letter and BPA. The Engagement Letter has one. The BPA does not. The BPA did not supersede the Engagement Letter, and, as a result, the Forum-Selection Clause of the Engagement Letter prevails.

[6] Finally, the jury waiver is not currently at issue. We note that the waiver is express, explicit and fully applicable. The Engagement Letter has not been superseded and thus the waiver of a right to trial by jury should apply under applicable law regardless of venue.

Respectfully Submitted,

**SHUTTS & BOWEN LLP**

*Stephen B. Gillman*
Stephen B. Gillman (FBN 196734)
Attorney Email: sgillman@shutts.com
Lonnie L. Simpson (FBN 821871)
Attorney Email: lsimpson@shutts.com
**SHUTTS & BOWEN LLP**
200 South Biscayne Boulevard, Suite 4100
Miami, Florida 33131
Tel:  305.347.7311
Fax: 305.381.9982

*Attorneys for Hapoalim Securities USA, Inc.*

Carol M. Goodman (Admitted *Pro Hac Vice*)
Attorney Email: cgoodman@herrick.com
Scott C. Ross (Admitted *Pro Hac Vice*)
Attorney Email: sross@herrick.com
**HERRICK, FEINSTEIN LLP**
Two Park Avenue
New York, New York 10016
Tel: 212.592.1400

*Co-Counsel for Defendant
Hapoalim Securities USA, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 17, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel identified below via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner.

**HERNANDEZ LEE MARTINEZ, LLC**
*Attorneys for Plaintiff*
Jermaine A. Lee, Esq. (jlee@whlmlegal.com)
Eric A. Hernandez, Esq. (eric@whlmlegal.com)
Arturo Martinez, Esq. (arturo@whlmlegal.com)

   */s/ Stephen B. Gillman*