**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(WEST PALM BEACH)**
**CASE NO.  18-CV-80596-DMM**

PALM BEACH MARITIME MUSEUM, INC., etc.

     Plaintiff,

vs.

HAPOALIM SECURITIES USA, INC., etc. et al,

     Defendants.

_____/

**DEFENDANT HAPOALIM SECURITIES USA, INC.'S REPLY IN**
**FURTHER SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**

     Hapoalim Securities USA, Inc. ("**HSU**") moved to dismiss the Academy's Complaint because its few well-pleaded, non-conclusory factual allegations directed at HSU do not state a plausible claim for relief, or establish federal subject-matter jurisdiction.  The Academy's opposition to HSU's motion ("**Opposition**") [DE 18] does not cure those defects and so the Complaint should be dismissed.

**I.**     **NO ACTUAL SECURITIES PURCHASER OR SELLER STANDING OR**
          **FEDERAL SUBJECT-MATTER JURISDICTION**

     The Academy does not contest that "only actual purchasers or sellers of securities" may sue for securities fraud [DE 18, p. 4-5].  *Fin. Sec. Assur., Inc. v. Stephens, Inc*., 500 F.3d 1276, 1283 (11th Cir. 2007). The Supreme Court has rejected efforts to broaden securities fraud standing beyond purchasers and sellers and, in later decisions, directed courts to give "narrow dimensions… to a right of action [Rule 10b-5] Congress did not authorize when it first enacted the statute and did not expand when it revisited the law." *Janus Cap. Grp., Inc., v. First Deriv. Traders*, 131 S. Ct. 2296, 3202 (2011) (quoting *Stoneridge Inv. Ptrs., LLC v. Scientific-Atlanta, Inc*., 552 U.S. 148 (2008)).  The *Blue Chip Stamps* purchaser or seller rule is one narrowing dimension.  That rule is not perfunctory, it is instead a mandatory "bright-line…standard," one "reaffirmed hundreds of

times." *MBIA Ins. Corp. v. Spiegel Hldgs., Inc*., 2004 WL 1944452, *2-*3 (S.D.N.Y. Aug. 31, 2004) (*citing Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731-32 (1975)).

The Academy alleged that it "issued the Bond" [DE 1, ¶ 198]. HSU addressed that allegation, establishing that it was negated by the Academy's own exhibits (preliminary and final bond documents including the Bond Purchase Agreement ("**BPA**")), which show conclusively that only the Public Finance Authority ("**Authority**") issued bonds and only HSU purchased them [DE 8, pp. 24-26, 48-49]. The *Blue Chip Stamps* bright-line standard dictates that the standing inquiry should end there. *Fin. Sec. Assur., Inc. v. Stephens, Inc*., 500 F.3d at 1283; *MBIA Ins. Corp*., 2004 WL 1944452 at *3.

Undeterred, the Academy abandoned its Bond issuer theory for an un-pleaded "promissory note seller" argument. In its revised contention, the Academy is a securities seller because it borrowed money from the bond seller (the Authority) and gave the Authority "the mortgage, notes and loan agreements" [DE 18 at 5]. For support, the Academy relies on two, decades-old district court opinions decided ***before*** the bright-line actual purchaser or seller requirement was reaffirmed: *Banco Nacional de Costa Rica v. Bremar Holdings Corp*., 492 F.Supp. 364 (S.D. N.Y. 1980) and *Realtek Indust., Inc. v. Nomura Sec.'s*, 939 F.Supp. 572 (N.D. Oh. 1996). Even assuming, *arguendo*, that the *Banco Nacional* and *Realtek* reasoning has any continued viability,[1] neither opinion supports the Academy's argument that it is a securities seller.

In *Banco Nacional*, a newly formed corporation, as borrower, issued ten unsecured promissory notes, payment of which was guaranteed by a Costa Rican bank "without need of any prior demand on, or default by" the borrower. *Banco National*, 492 F.Supp. at 366-67. A lender accepted the notes, intending to immediately sell or hypothecate them in the secondary market. *Id*.

---

[1] At least one district court (in the same district) has discounted *Banco Nacional*'s viability "after more than twenty intervening years of the bright-line *Blue Chip Stamps* standard." *MBIA Ins. Corp*., 2004 WL 1944452 at *4.

at 369.  The bank advanced payments under its guarantee, but the borrower failed to pay as promised.  The bank sued both the borrower and lender for violating Section 10b and Rule 10b-5, alleging that the notes it guaranteed were securities.  The defendants moved to dismiss for lack of standing, arguing that the notes were not securities and the bank was neither a securities purchaser nor seller.  The *Banco Nacional* Court declined to dismiss, as it found the bank's guarantee made it a primary obligor such that the bank "st[ood] in the shoes of the maker, or issuer, of those notes, who [was] undeniably a 'seller' within the meaning of the statute.'" *Id*. at 371.

The Academy did not issue a promissory note expecting it to be sold immediately to investors in a secondary market.  The Authority did not receive a promissory note expecting to immediately sell it to the investing public.  Even under *Banco Nacional*, the Academy's promissory note is not an investment security and the Academy is not a securities seller.[2]

Moreover, *Banco Nacional*'s "stood in the shoes" rationale has not survived the Supreme Court decisions that direct courts to give "narrow dimensions… to [the Rule 10b-5] right of action." *Janus Cap. Grp., Inc.,* 131 S. Ct. 2296, 3202; *Stoneridge Inv. Ptrs., LLC,* 552 U.S. 148.  The *Blue Chip Stamps* actual purchaser or seller standard is one such narrow dimension.  *MBIA Ins. Corp*., 2004 WL 1944452 at *4 (discounting *Banco Nacional*'s viability "after more than twenty intervening years of the bright-line *Blue Chip Stamps* standard.").  The Academy has offered nothing which would permit the Court to depart from the actual purchaser or seller rule or expand

---

[2] Likewise, since the purchaser/seller standard was not at issue, the Academy's lengthy discussion of cases describing "guaranteed contracts," the "family resemblance" of an unidentified promissory note and "investment contracts" is immaterial.  Moreover, the Academy did not offer or sell anything to the investing general public – not  "guaranteed contracts" (*see S.E.C. v. Chem. Trust*, 2000 WL 33231600, *2 (S.D. Fla. Dec. 19, 2000)); not uncollateralized, unsecured demand notes (*see Reves v. Ernst & Young*, 494 U.S. 56 (1990)); not pooled foreign currency options contracts (*see S.E.C. v. Unique Fin. Concepts, Inc*., 196 F.3d 1195, 1197 (11th Cir. 1999)); nor payphone sale-and-leaseback contracts (*see S.E.C. v. Edwards*, 540 U.S. 389, 391-92 (2004)).

the "judicial[ly] creat[ed] private cause of action…beyond its present boundaries." *Stoneridge*, 552 U.S. at 165.

Like *Banco Nacional*, *Realtek Indust., Inc. v. Nomura Sec.'s*, 939 F.Supp. 572 (N.D. Oh. 1996), provides the Academy no present-day support.  In *Realtek*, a real estate company agreed to "issue and sell rated securities to a [real estate mortgage investment conduit] entity and [an investment banker], for [the investment banker] to buy and resell them (possibly after repackaging) to investors."  *Id.* at 577, 582.  Those rated securities were 60 promissory notes, pooled to "create certificates of undivided ownership" or "participation certificates" to be sold to investors.  *Id.* at 575-76.  Borrowing from *Banco Nacional*, the *Realtek* Court "deemed [the real estate company] a seller of securities for purposes of Rule 10b-5" because it alleged that it was "obliged to sell a security." And the court found that allegation was not "completely specious," *Id.* at 582. (a finding not close to meeting *Twombly's* plausibility standard).

Unlike *Realtek*, the Academy had no obligation to issue or sell any security – rated or otherwise.  HSU had no obligation to buy any security from the Academy.  The Academy did not give the Authority multiple mortgages secured by separate multi-unit residential properties to be pooled and sold in fractional shares to the investing public.  *Realtek* does not transform the Academy's note into an investment security or the Academy into a securities seller.

The Academy did not purchase or sell a security.  Most critically, the Academy did not allege – and cannot allege – that it actually sold or purchased any security, so it lacks standing to bring a securities fraud claim.  As amendment would be futile, the Court should dismiss Count 1, with prejudice, and lacking any federal claim, the remaining counts should be dismissed for lack of subject-matter jurisdiction.  *See Desert Land, LLC v. Owens Financial Group, Inc*., 154 Fed.App'x. 586, 587-88 (9th Cir. 2005) (vacating judgment entered on state-law claims following dismissal of federal securities fraud claim for lack of standing).

4

## II. NO PLAUSIBLE CLAIM FOR RELIEF

A. *Fraud/Misrepresentation Claims (Counts 1 – 5) are Insufficient.*

HSU did not move to strike any portion of the Complaint or question the Academy's right to make allegations about other defendants.  Rather, because a plausible legal claim against HSU may only be based on well-pleaded factual allegations as to HSU's conduct, HSU asked the Court to disregard Complaint paragraphs that say nothing about HSU.  The Court need not navigate a swamp of rhetoric, side-stories, misleading and confusing labels, or allegations contradicted by the exhibits, unwarranted and unsupported conclusions, or allegations directed at defendants other than HSU.  Because the few well-pleaded, non-conclusory factual allegations directed at HSU do not permit the Court to plausibly infer that HSU may be liable for any of the misconduct the Academy attributes to it, the Court should dismiss the Complaint as to HSU.

The Complaint fails to state with the required particularity circumstances that plausibly establish fraud or misrepresentation.  Fed.R.Civ.P. 9(b); 15 U.S.C. § 78u-4(b)(1)(B); *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008).  The Opposition clarifies that the Academy's fraud claim is based entirely on a supposed statement or omission made during negotiations for the purchase of the Lantana 2 property, arguing that HSU said "ESJ [Lantana 2's seller] would allocate…" sale proceeds to develop Lantana 2 [DE 18 at 8-9; DE 1-16].  That argument fails because HSU's June 19, 2014 letter [DE 1-16], the Complaint exhibit on which the Academy relies, says no such thing.  Rather, that brief letter simply reports that, as stated in the then-current bond offering documents, "the proceeds of the Series 2014 Bonds will be utilized for the acquisition of Lantana 1, the acquisition of Lantana 2, and the build-out of an additional facility for a total capacity of 1100 students by Lantana 2's seller, at no additional cost to the Academy"

[compare DE 1-16 with DE 1 ¶¶ 131-132 and DE 18 at 9].[3]  Notably, the Academy does not allege that bond proceeds were used for any other purposes or that $24.6 million would not cover acquisition and buildout costs.

The Academy similarly failed to identify any HSU "fraudulent omission." Instead, the Academy simply points to two documents that it claims were "not disclosed to" its directors [DE 1-15, 1-20], but which it admits were timely provided to Mr. Grant - the Academy's president and chief executive officer.  The fallacy with the Academy's contention is its unsupported assumption that HSU had a duty to "disclose" documents directly to the directors.  First, under the BPA, the Academy agreed that HSU owed no fiduciary duties to it.  Second, nowhere does the Academy allege that it directed HSU not to communicate through Grant, or that it told HSU that Grant's actual or apparent authority as president/CEO had been limited in any way, or that HSU prevented or interfered with Grant's forwarding documents to the directors.   Third, it is undisputed that the documents were actually delivered to, and received by, the Academy's president/CEO. Fourth, other than naked conclusions, there are no well-pled facts alleged that could plausibly support any inference that HSU knew that these documents were being withheld from the directors by the Academy's most senior executive.

The Complaint likewise contains no well-pleaded, non-conclusory factual allegations that give rise to a strong inference that HSU intended to defraud the Academy or that it acted with severe recklessness.  15 U.S.C. § 78u-4(b)(2);  *Mizzaro v. Home Depot, Inc*. 544 F.3d 1230, 1238 (11th Cir. 2008) (dismissing securities fraud complaint where plaintiff failed to allege facts that created "a *strong inference* – again, one that is 'cogent and compelling' – that the individual defendants knew about the alleged fraud (or were severely reckless in not knowing about it) when

---

[3] The referenced bond offering document was the PLOM which disclosed as to Lantana 2 that "The contract for the purchase of the Lantana 2 Facility has not been executed and is currently under negotiation." [DE 8, p. 50]

6

they made the purportedly false or misleading statements.") (emphasis in original); *Wells Fargo Adv. Nat'l Tax Free Fund v. Helicon Assoc's, Inc.* 2010 WL 11541839, *7 (E.D. Mi.  March 15, 2010) (holding the fact that law firm earned fees from its services as underwriter's counsel and special counsel in a municipal bond issue "does not raise an inference of scienter").   On the Complaint's few well-pleaded, non-conclusory factual allegations, no reasonable person would conclude that HSU intended to defraud or acted with recklessness toward the Academy. The deficient Complaint cannot not pass the "pleadings stage [because it does not] allege facts sufficient[] to demonstrat[e] [HSU's] state of mind regarding [its] alleged violations." *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1018 (11th Cir. 2004).

The Complaint contains no well-pleaded, non-conclusory factual allegations that show the Academy actually, reasonably or justifiably relied on any purportedly false HSU statement.  Rather, the Complaint shows that one of the Academy's charter school and bond finance consultants, Ms. Aguiar, and its president and chief financial officer, Mr. Grant, had all of the information the Academy claims HSU withheld from, or misrepresented to, the Academy **before** the Academy's board of directors "approved the issuance" of any bonds; before the Authority issued any bonds; and before the Academy borrowed money from the Authority. That information included the unsigned "inducement" letter [DE 1-15]; the rejected unsigned draft PSA [DE 1-12]; the signed Lantana 2 letter of intent [DE 1 ¶ 87; DE 1-8 at 2]; and the revised PSA [DE 1-20].

The Complaint alleges that HSU generally communicated with the Academy through Ms. Aguiar and Mr. Grant and Ms. Aguiar, but as noted, there was no allegation that such practice was precluded or limited in any way by the Academy.  Mr. Grant and Ms. Aguiar negotiated contracts on the Academy's behalf; they communicated with and forwarded documents to the Academy's directors, attorney and consultants; they attended Academy board meetings; and Mr. Grant signed documents as the Academy's authorized agent [*see, e.g.*, DE 1 ¶¶ 69, 73, 97-100, 105, 110; DE 1-

7

10, 1-12, 1-15, 1-20].  In any event, even if Mr. Grant and Ms. Aguiar had not disclosed all relevant information to the Academy's directors by the June 19 board meeting, the directors had all supposedly concealed information before the bond closing date; before the Authority issued any bonds; and before the Academy borrowed any money from the Authority.

Rejecting "unsigned draft" documents does not erase the information contained in those documents from Academy's collective knowledge, as the Academy pretends.  No document provides that "ESJ [the Lantana 2 seller] would allocate" some Lantana 2 sale proceeds, only that was in negotiation [DE 8, p. 50].  The Academy cannot have actually, reasonably or justifiably relied on an opposite statement. *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1295-96 (S.D. Fla. 2007) ("[R]eliance on fraudulent representations is unreasonable as a matter of law where the alleged misrepresentations contradict the express terms of the ensuing written agreement").

B. *The Remaining Claims (Counts 6 – 9) Are Insufficient.*

As to Count 6, the Academy made no attempt to refute HSU's showing that no sufficient breach of fiduciary duty claim was, or could be, pled.  Indeed, the Academy chose not to respond at all.  While that failure to respond permits dismissal under Local Rule 7.1(c), dismissal is required here because the Academy unambiguously and specifically agreed in the BPA that HSU was not a fiduciary and owed it no fiduciary duties [DE 8, p. 26, §1].

As to Count 7, the Academy's aiding and abetting claim is deficient because it is not supported by any well-pleaded, non-conclusory factual allegations that would permit any plausible inference that HSU knew that Mr. Grant or former directors Burckhart and Smith were breaching any duty owed to the Academy or that HSU acted to aid any such breach.  The Complaint offers nothing more than the conclusion "[HSU] knew that Grant, Burckhart and Smith owed and were breaching their duties…" [DE 1 ¶ 257].  That naked assertion is not to be assumed true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Complaint contains no well-pleaded, non-

8

conclusory factual allegations from which the Court could plausibly infer that HSU "knew" about any primary wrong-doer's breach, or that HSU provided substantial assistance to or encouragement for that breach.  *Sensormatic Elect. Corp. v. TAG Co. US, LLC*, 632 F.Supp.2d 1147, 1192 (S.D. Fla. 2008).

As to Count 8, the Academy's civil conspiracy similarly claim fails as there are no well-pleaded, non-conclusory factual allegations from which the Court may plausibly infer that HSU agreed with any other person or entity to accomplish an illegal goal or perform an unlawful act. The Academy's labels and conclusions, and threadbare recitation of claim elements do not provide those critical factual allegations. *Twombly*, 550 U.S. at 555 (plaintiff's "agreement" allegation was no more than a legal conclusion and was insufficient to state a plausible claim for relief); *Phelan v. Lawhon*, 2017 WL 1177595, *4 (Fla. 3d DCA 2017) (citation omitted).[4]

As to Count 9, Florida law generally recognizes a "negligent supervision" cause of action where "during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions…"  *Doe v. Fla. Dep't of Corr.*, 2018 U.S. Dist. Lexis 6734, *6 (S.D. Fla. Jan 12, 2018).  The Complaint, however, contains no well-pleaded, non-conclusory factual allegations that show that HSU "bec[ame] aware or should have become aware of problems [with Mr. Chan] that indicated his unfitness."  *F.D.E.P. v. Hardy*, 907 So.2d 655, 660 (Fla. 5th DCA 2005).

The Academy sued HSU for allegedly violating FINRA Rule 3110.  That rule imposes no duty to the general public or the Academy and provides no negligence cause of action. *Thompson v. Smith Barney, Harris Upham & Co., Inc*., 709 F.2d 1413 (11th Cir. 1983); *Fox v. Lifemark Sec. Corp.*, 84 F. Supp. 3d 239, 245 (W.D.N.Y. 2015) ("FINRA does not provide a private right of

---

[4] HSU does not rely on the *in pari delicto* doctrine to demonstrate implausibility of the Academy's civil conspiracy or aiding and abetting claims [DE 18, p. 19].  Rather, those claims fail because they are insufficiently pleaded.

action, thus even if defendants violated FINRA rules, plaintiff cannot recover for negligence based on the alleged violation of [a FINRA rule].").

While denying that its claim is an attempt to invoke a private right of action or duty arising under FINRA Rule 3110, a rule violation is all that the Academy alleged and no other source of the alleged duty is alleged.  The Academy's attempt to pass off its reference to that rule as made simply "…to explain [a] source of information," and its statement that it "is not suing HSU because of its failure to comply with FINRA Rule 3110" lacks credence. [DE 18, p.16].  The Court should dismiss Count 9 as it fails to state a plausible claim for relief.

## III.  CONCLUSION

The Academy fails to establish the Court's federal subject-matter jurisdiction, or state any plausible claim for relief against HSU. The Court should dismiss Count 1, with prejudice, and all remaining state-law based Counts (2 - 9) should be dismissed for lack of subject matter jurisdiction. Alternatively, Counts 2 – 9 should be dismissed for failure to state a plausible claim for relief.

Respectfully submitted,

**SHUTTS & BOWEN LLP**
*Stephen B. Gillman*
Stephen B. Gillman (FBN 196734)
Attorney Email: sgillman@shutts.com
Lonnie L. Simpson (FBN 821871)
Attorney Email: lsimpson@shutts.com
**SHUTTS & BOWEN LLP**
200 South Biscayne Boulevard, Suite 4100
Miami, Florida 33131
Tel:  305.347.7311
Fax: 305.381.9982
*Attorneys for Hapoalim Securities USA, Inc.*

Carol M. Goodman (Pro *Hac* Pending)
Attorney Email: cgoodman@herrick.com
Scott C. Ross (Pro *Hac* Pending)
Attorney Email: sross@herrick.com
**HERRICK, FEINSTEIN LLP**
Two Park Avenue
New York, New York 10016
Tel: 212.592.1400
*Co-Counsel for Defendant Hapoalim*
*Securities USA, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on July 20, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel identified below via transmission of Notices of Electronic Filing generated by CM/ECF.

**HERNANDEZ LEE MARTINEZ, LLC**
*Attorneys for Plaintiff*
Jermaine A. Lee, Esq.
Eric A. Hernandez, Esq.
Arturo Martinez, Esq.
P.O. Box  531029
Miami, Florida 33153
(T) (305) 842-2100
(F) (305) 842-2105
(E) jlee@whlmlegal.com
eric@whlmlegal.com
arturo@whlmlegal.com

/s/ *Stephen B. Gillman*
Of Counsel

MIADOCS 16727063 1