UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO. 1:19-cv-00908-LAP

PALM BEACH MARITIME MUSEUM, INC.,
a Florida not-for-profit corporation,

      Plaintiff,

  v.

HAPOALIM SECURITIES USA, INC.,
a foreign corporation, EDWARD CHAN,
PATRICIA AGUIAR, FABIO D'ASCOLA,
and BILL BURCKHART,

      Defendants.

_____/

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND COMPLAINT**

**ZARIN & ASSOCIATES P.C.**
*Lead Counsel for Plaintiff*
*Palm Beach Maritime Museum, Inc.*

244 West 102nd Street, #3B
New York, NY 10025
Phone: (212) 580-3131
Facsimile: (212) 580-4393

-and-

**HERNANDEZ LEE MARTINEZ, LLC**
*Lead Counsel for Plaintiff*
*Palm Beach Maritime Museum, Inc.*

9190 Biscayne Blvd, Suite 204
Miami Shores, Florida 33138
Phone: (305) 842-2100
Facsimile: (305) 842-2105

## TABLE OF CONTENTS

Table of Contents…………………………………………………………………..  i

Table of Authorities…………………………………………………………………  ii

I. Introduction…………….……………………………………………………..  1

   A.  Justice Requires Granting Leave To Amend………………..………………..…  3

      1.  There Has Been No Undue Delay, Bad Faith, Dilatory Motive,
         Undue Prejudice, Or Repeated Failures To Cure Deficiencies By
         Amendments Previously Allowed…………………………………………..  3

      2.  The Proposed Amendment Is Not Futile…………………………………..  5

II. Conclusion……………………………….…………………………...................  11

## **TABLE OF AUTHORITIES**

**Cases**

*Banco Nacional de Costa Rica v. Bremar Holdings Corp.*,
    492 F. Supp. 364 (S.D.N.Y. 1980)………………………………………… 8, 9, 10

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975)………………………………………...................... 6, 7

*Broad v. Rockwell Intern. Corp.*,
    614 F.2d 418 (5th Cir. 1980)………………………………………… 7

*Foman v. Davis*,
    371 U.S. 178 (1962)………………………………………………….. 3, 5

*Gelles v. TDA Indus.*,
    44 F.3d 102 (2d Cir. 1994)…………………………………………… 7

*Lawrence v. Cohn*,
    325 F.3d 141 (2d Cir. 2003)………...………………………………... 6

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015)………………………………………….. 3

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006)………………………………………...................... 7

*Monahan v. N.Y.C. Dep't of Corr.*,
    214 F.3d 275 (2d Cir. 2000) ………...……………………………….. 3

*Palm Beach Mar. Museum, Inc. v. Hapoalim Sec. USA, Inc.*,
    2019 WL 1950139 (S.D.N.Y. Apr. 10, 2019)…………………………... 2, 5, 6, 8, 9, 10

*Palm Beach Mar. Museum, Inc. v. Hapoalim Sec. USA, Inc.*,
    2020 WL 1861410 (2d Cir. Apr. 14, 2020)…………………………….. 2, 4

*Pasternack v. Shrader*,
    863 F.3d 162 (2d Cir. 2017)………………………………………….. 3, 5

*Realtek Indus. v. Nomura Sec.*,
    939 F. Supp. 572 (N.D. Ohio 1996)………………………………….. 8, 9

*SEC v. Zandford,*
    535 U.S. 813 (2002)…………………………………………….............................   7

**Statutes and Regulations**

15 U.S.C. § 78c(a)(10),(13),(14)………………………………………….......   7, 8

15 U.S.C. § 78j(b)…………………………………………….......................   1, 6

17 C.F.R. § 240.10b-5………………………………………………………..   6

# I. **Introduction**.

Plaintiff, Palm Beach Maritime Museum, Inc. ("PBMM"), filed this action in the United States District Court for the Southern District of Florida, on May 7, 2018.  (D.E. 1.) It asserted federal question jurisdiction premised on claims for securities fraud in accordance with Section 10(b) of the Securities Exchange Act of 1934 ("Act"), 15 U.S.C. § 78j(b).  (*Id.*)

More specifically, PBMM, a charter school, alleged that, in connection with the underwriting and approval of an approximately $24 million bond issuance aimed to assist PBMM's expansion plans, Defendants misled PBMM, misrepresenting that the owner of a property known as "Lantana 2" had agreed to sell the same to PBMM for $8 million, and to use $2.5 million thereof to develop additional classroom space at no additional cost to PBMM.  (*Id.* ¶¶ 1-4.)  In addition to the claims for federal securities fraud (Counts 1, 10, 16, 21), PBMM stated claims for Florida securities fraud (Counts 2, 11, 17, 22), common law fraud, misrepresentation, and conspiracy to commit fraud (Counts 3, 4, 5, 7, 14, 15, 18, 19, 23, 24), breach of fiduciary duties (Counts 6, 12), aiding and abetting breach of fiduciary duties (Counts 8, 13, 20, 25), and negligent supervision (Count 9).  (D.E. 1.)

Subsequently, based on a contractual forum selection clause, Defendant, Hapoalim Securities USA, Inc. ("Hapoalim"), successfully moved to transfer the action to this Court, with the action being docketed herein on January 30, 2019.   (D.E.s 72, 73.) At the time of the transfer, Defendants Hapoalim, Edward Chan ("Chan"), and Fabio D'Ascola ("D'Ascola") had filed motions to dismiss that remained unaddressed and at issue. (D.E.s 7, 8, 18, 23, 44, 45, 51, 52, 61, 65.)[1]

---

[1]  PBMM was unable to locate and effect service of process on Defendants Patricia Aguiar and Bill Burckhart.

On April 10, 2019, the Court granted Defendants' motions to dismiss (D.E. 92), entering judgment on April 11, 2019.  (D.E.s 92, 93.)  *See Palm Beach Mar. Museum, Inc. v. Hapoalim Sec. USA, Inc.*, 19 CIV. 908 (LAP), 2019 WL 1950139 (S.D.N.Y. Apr. 10, 2019) ("*PBMM*").  Specifically, the Court dismissed the action for lack of subject matter jurisdiction, finding that PBMM was neither a securities purchaser or seller in the referenced bond issuance transaction, as required for it to have standing to maintain federal securities claims.  *Id*. at *2-5.  Therefore, the Court dismissed the federal securities claims with prejudice, and declined to exercise supplemental jurisdiction over PBMM's state law claims.  *Id*.

On April 14, 2020, the Second Circuit Court of Appeals affirmed in part and vacated in part this Court's determination, and remanded the action for further proceedings consistent with its opinion.  *See Palm Beach Mar. Museum, Inc. v. Hapoalim Sec. USA, Inc.*, 19-1384-CV, 2020 WL 1861410 (2d Cir. Apr. 14, 2020).  In particular, the Court of Appeals affirmed this Court's dismissal of the complaint given that under its allegations PBMM was neither an issuer or seller of the bonds in the transaction at issue.  *Id*. at *2-3.  However, the Court of Appeals declined to express a view on an alternative argument that this Court considered, which PBMM advanced in opposition to the motions to dismiss but did not address in the complaint's allegations.  *Id*. Specifically:  whether PBMM's role in issuing and conveying the promissory notes underlying the bond transaction render it a "seller" of "securities" for purposes of the Act.  *Id*.

The Court of Appeals further observed that PBMM had requested leave to amend the complaint should this Court find dismissal appropriate, and that the request was denied, with dismissal ordered with prejudice without an explanation.  *Id*. at *3-4.  Accordingly, the Court of Appeals vacated the dismissal with prejudice, remanding the matter to this Court for it to address whether, as PBMM submits, granting leave to amend is appropriate under Rule 15.

2

A.  **Justice Requires Granting Leave To Amend**.

The Supreme Court has instructed that Rule 15's mandate—*i.e.*, that leave to amend "shall be freely given when justice requires"—"is to be heeded", and "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits"; "[i]n the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.'"  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *accord Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) ("[A]bsent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed.").

This is a liberal and permissive standard, consistent with this Circuit's "strong preference for resolving disputes on the merits."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (quotation marks omitted).

In accordance with the foregoing principles, PBMM respectfully requests the opportunity to amend its complaint, as the underlying facts and circumstances giving rise to its claims are a proper subject of relief in the interest of justice, and none of the reasons that would warrant deviation from the Circuit's strong preference for the resolution of disputes on the merits is present.

1.  **There Has Been No Undue Delay, Bad Faith, Dilatory Motive, Undue Prejudice, Or Repeated Failures To Cure Deficiencies By Amendments Previously Allowed**.

Only where undue delay is coupled with a showing of bad faith or undue prejudice can leave to amend be properly denied on that ground.  *See Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) ("The rule in this Circuit has been to allow a party to amend its pleadings in the

3

absence of a showing by the nonmovant of prejudice or bad faith. . . .   [M]ere delay, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend.  Nor can complaints of the time, effort and money expended in litigating the matter, without more, constitute prejudice sufficient to warrant denial of leave to amend. . . .   [D]elay (and its necessary consequence, litigation expense) does not, without more, constitute undue prejudice.") (internal quotation marks, brackets, ellipses, and citations omitted).

In this case there has been no undue delay or dilatory motive in seeking an amendment, nor bad faith or undue prejudice, much less repeated failures to cure deficiencies by amendments previously allowed.  As noted, PBMM filed its only complaint on May 7, 2018 (D.E. 1), served Hapoalim soon thereafter, Hapoalim filed motions to transfer (D.E.s 6, 9) and for dismissal (D.E.s 7, 8), and that briefing was completed by July 20, 2018.  (D.E.s 17, 18, 22, 23.)

Despite PBMM's diligence, it was unable to locate and effect service of process on other Defendants, and thus, sought and obtained additional time to do so.  (D.E.s 24, 25.)  PBMM was subsequently able to serve Defendants Chan and D'Ascola, who entered appearances (D.E.s 32, 39), and moved to dismiss (D.E.s 44, 45), with their briefing completed by December 24, 2018.  (D.E. 51, 52, 61, 65.)

The Florida district court granted Hapoalim's motion to transfer on January 28, 2019 (D.E. 72), and the transfer was docketed on January 30, 2019.  (D.E. 73.)  At that time the dismissal motions remained at issue, and as the Court of Appeals observed (2020 WL 1861410 at *3), in each of its memoranda opposing a dismissal—the first one filed on July 3, 2018— PBMM requested leave to amend should any of the dismissal arguments be found to have merit.  (D.E.s 18 at 20, 51 at 7, 52 at 6.)  However, the Court's dismissal was with prejudice.  (D.E. 92.)

Considering the foregoing, there can be no reasonable contention that PBMM unduly delayed seeking leave to amend, much less that it did so in bad faith or that an amendment will unduly prejudice Defendants.  Indeed, this would be the first amendment in this action, and given the absence of any pressing deadlines, the amendment will not disadvantage Defendants' efforts to defend themselves on the merits.  Thus, aside from what would at most be assertions of added time, effort, and money—which are alone insufficient considerations (*Pasternack*, 863 F.3d at 174)—there can be no showing of undue prejudice to Defendants.

In sum, the pertinent law of this Circuit is to permit an amendment unless the nonmovant demonstrates bad faith or undue prejudice.  *Id*.  None of that can be shown in this case.  Therefore, PBMM respectfully submits that leave to amend cannot be properly denied on considerations of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party by virtue of allowance of the amendment".  *Foman*, 371 U.S. at 182.  Accordingly, the mandate that "leave to amend 'shall be freely given when justice so requires'" (*id*.) should be heeded.

## 2.  <u>The Proposed Amendment Is Not Futile</u>.

At the outset, while subject matter jurisdiction in the initial complaint was premised solely on claims for federal securities fraud, the proposed amendment (**Exhibit A** ("Prop. Am. Compl.")) also asserts diversity jurisdiction.  (Prop. Am Compl. ¶¶ 10-14.)  Accordingly, the Court's prior subject matter jurisdiction determination does not apply to the proposed amendment.

Nonetheless, the proposed amendment adds clarity to the facts underlying this Court's determination, and show that federal question jurisdiction is also proper.  In particular, the Court determined that PBMM was not a securities "seller" under the scope of the Securities Exchange Act of 1934, as required for PBMM to have standing to maintain federal securities claims.

*See PBMM*, 2019 WL 1950139, at *2-5.  In this regard, given the facts alleged and the documents on file, the Court discounted PBMM's status as securities "seller" vis-à-vis the promissory notes it issued attendant to the funds it borrowed in connection with the subject bonds.  *Id*. at *4-5.

The proposed amendment clarifies that the transaction involved:

(a) the Public Finance Authority ("PFA"), a Wisconsin government entity, as

(1) issuer of bonds totaling $24,640,000 ("Bonds"), and

(2) recipient of promissory notes in the same amount ("Notes") issued by PBMM;

(b) Hapoalim, as

(1) the transaction's underwriter, and

(2) initial purchaser of the Bonds in an underwriter capacity, in order to market and offer the Bonds to qualified institutional buyers ("Bondholders"); and,

(c) PBMM, as

(1) borrower of the Bonds' sale proceeds from the PFA, to be used as part of its capital improvements, and

(2) issuer and transferor of the Notes to the PFA, which the PFA assigned to U.S. Bank National Association, the transaction's trustee ("Trustee"), to be held in trust for the benefit of the Bondholders' repayment rights.

(Prop. Am Compl. § F.)  Under this structure, PBMM was a securities "seller".

First, it is undisputed that relief under Section 10(b) of the Act (15 U.S.C. § 78j(b)), and Rule 10b-5 (17 C.F.R. § 240.10b-5), is limited to an "actual purchaser or seller of a security." *Lawrence v. Cohn*, 325 F.3d 141, 147 (2d Cir. 2003) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730-31 (1975)).

However, the statutory scope of what constitutes a "seller" is broad and encompasses PBMM's issuance and transfer of the Notes to the PFA in the subject transaction. *See Blue Chip Stamps*, 421 U.S. at 750-51 (noting that "[a] contract to purchase or sell securities is expressly defined by § 3 (a) of the 1934 Act," and that "purchasers" or "sellers" thereunder have been recognized, "not because of a judicial conclusion that they were similarly situated to 'purchasers' or 'sellers,' but because the definitional provisions of the 1934 Act themselves grant them such a status."); *Gelles v. TDA Indus.*, 44 F.3d 102, 104 (2d Cir. 1994) (noting that "[a] transaction need not involve cash to constitute a purchase or sale under Rule 10b-5."); *Broad v. Rockwell Intern. Corp.*, 614 F.2d 418, 435 (5th Cir. 1980) ("[A] statutory 'purchase' or 'sale' is not necessarily a technical purchase or sale in the common-law sense."), *on reh'g en banc*, 642 F.2d 929 (5th Cir. 1981), *cert. denied,* 454 U.S. 965 (1981).

Specifically, the terms (a) "'buy' and 'purchase' each include any contract to buy, purchase, or otherwise acquire" a security, and (b) "'sale' and 'sell' each include any contract to sell or otherwise dispose of" a security. 15 U.S.C. § 78c(a)(13),(14) (emphases added); *see also* 15 U.S.C. § 78c(a)(10) (defining "security" as including any "note" not otherwise excepted).

These broadly framed terms must be further considered under the Supreme Court's directive that the Act "should be construed not technically and restrictively, but flexibly to effectuate its remedial purposes." *SEC v. Zandford*, 535 U.S. 813, 819 (2002) (quotations omitted); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006) (explaining that the Act's key language—*i.e.*, "in connection with the purchase or sale of any security"—is broadly interpreted such that, "[u]nder our precedents, it is enough that the fraud alleged 'coincide' with a securities transaction--whether by the plaintiff or by someone else.").

Here, as part of the integrated transaction effected in accordance with the parties' bond purchase agreement, PBMM entered into a Loan Agreement with the PFA, pursuant to which PBMM "disposed of" (15 U.S.C. § 78c(a)(14))—and the PFA "acquired" (15 U.S.C. § 78c(a)(13))—two Notes for the principal sum that PBMM borrowed from the PFA (*i.e.*, $24,640,000), which were the very Bonds' sale proceeds used to fund the loan. (Prop. Am Compl. § F.)

Stated otherwise, (a) <u>with respect to the Bonds</u>, the PFA was a "seller" and Hapoalim a "purchaser" with the aim, as underwriter, to then offer the Bonds to qualified investors, and (b) <u>with respect to the Notes</u>, PBMM was a "seller", with the PFA as "purchaser", as the PFA acquired the Notes from PBMM in exchange for a loan of the Bonds' sale proceeds, assigning the Notes to the Trustee, for the repayment obligations embodied therein to be satisfied from PBMM's assets and revenues.  (*Id*.)  Thus, the fundamental aspects of the transaction involved PBMM's role as borrower of the Bonds' sale proceeds and issuer of the Notes transferred to the PFA to repay the Bondholders' investment in the Bonds.  The Court's dismissal order ("Order") did not recognize that PBMM was a "seller" of the Notes given this arrangement.

First, considering *Realtek Indus. v. Nomura Sec.*, 939 F. Supp. 572 (N.D. Ohio 1996), the Court found the decision "unavailing", noting that in that case there were documents stating the plaintiff "'would be the issuer of rated securities that would be purchased.'"  *PBMM*, 2019 WL 1950139, at *2-3 (quoting *Realtek* at 582).  However, the substance of a transaction, not its form or characterization, is what governs the statutory analysis.  *See, e.g., Banco Nacional de Costa Rica v. Bremar Holdings Corp.*, 492 F. Supp. 364, 368 (S.D.N.Y. 1980) (noting, in examining whether promissory notes were securities within the Act, that "the determinative factor is not the form of the notes but the substance of the transaction in which they played a part.").  Here, irrespective of

whether underlying documents declare that PBMM's transfer of the Notes to the PFA in exchange for a loan of the Bonds' sale proceeds constitutes a sale or purchase of securities, that is the substance of the transaction under the Act's stated definitions.

More importantly, the Order did not recognize that the *Realtek* court found an independent reason to determine that the transaction at issue—which just like here, required a borrower's transfer of promissory notes to a lender—involved the sale of securities within the scope of the Act. *See Realtek*, 939 F. Supp. at 580-83 (citing, *inter alia*, *Banco Nacional*, 492 F. Supp. at 365). That is, the *Realtek* court reasoned, from the structure of the contemplated transaction requiring a borrower to issue multiple notes to a lender, that **the transfer of the notes was a sale, with the borrower as seller under the Act**. *Id*.

Here, the Order did not question that PBMM's Notes are securities under the scope of the Act, but it declined to consider **the transfer** of the Notes a "sale", with PBMM as "seller" thereunder. *PBMM*, 2019 WL 1950139, at *2-3. Again, the Order does not acknowledge *Realtek*'s rationale in this regard. *Id*.

In addition, the Order confused the PFA's role in the subject transaction. It stated:

> Plaintiff asserts that an issuer of notes for significant capital improvements is a seller with standing. Assuming this is true, ***this only applies to the issuer, the Public Finance Authority***.

*Id*. (emphasis added). As previously explained, however, it is PBMM, not the PFA, who issued the Notes. Thus, the premise underlying the foregoing statement is in error, vitiating the validity of the ensuing conclusion. Stated otherwise, accepting the point the Order professed to assume— *i.e.*, that "an issuer of notes for significant capital improvements is a seller with standing" (*id*.)— then the issuer of the Notes—*i.e.*, PBMM—is indeed a seller with standing to assert federal securities claims under the Act. Again, the Order's statement to the contrary is premised

on a mistaken assertion about the PFA's role in the transaction.  To reiterate, the PFA issued the Bonds, and PBMM issued and transferred the Notes to the PFA in exchange for a loan of the proceeds of the Bonds' sale.  The proposed amendment adds clarity in this regard.

The proposed amendment also adds clarity to the reason why PBMM cited to the analysis in *Banco Nacional* (492 F. Supp. 364) in opposing a dismissal.  (D.E. 18 at 5.)  That is, PBMM's point in citing to *Banco Nacional* was not to advance the "constructive seller" argument that the Court addressed in the Order.  *See PBMM*, 2019 WL 1950139 at *3-4.  Rather, PBMM's distinct point in citing *Banco Nacional* was that, if under the circumstances of that case, even the note guarantor was found to be a seller pursuant to the Act because it "st[ood] in the shoes" of the borrower that issued the notes to the lender, then certainly, the actual issuer of the notes—*i.e.*, Corporacion Azucarera del Sur ("CAS")—is a "seller" under the Act.  In fact, that is what the *Banco Nacional* court noted in its analysis.  *See Banco Nacional*, 492 F. Supp. at 371 ("Banco Nacional, as the guarantor 'por aval' of ***the notes issued by CAS***, stands in the shoes of ***[CAS,] the maker, or issuer, of those notes, who is undeniably a 'seller' within the meaning of the statute***.") (emphasis added).

In other words, if CAS was a "seller" when it issued and transferred notes to a lender in connection with a capital improvements loan, then PBMM was also a "seller" in undistinguishably issuing and transferring the Notes to the PFA.  Here, although the Order recognized that PBMM's role in the transaction was analogous to that of CAS in *Banco Nacional*—*i.e.*, "[plaintiff] is acting more as Corporacion Azucarera del Sur, the defendant in *Banco Nacional*, that actually borrowed the money to purchase the sugar mill equipment" (*PBMM*, 2019 WL 1950139, at *3)— it declined to treat PBMM precisely as what the *Banco Nacional* court noted CAS was as a capital improvement borrower and note issuer—*i.e.*, "a 'seller' within the meaning of the statute."

*Banco Nacional*, 492 F. Supp. at 371.  Again, the proposed amendment adds clarity with respect to the bond transaction and PBMM's role within it.

In sum, given the facts alleged in the complaint and documents on file, the Court did not question that the Notes are securities, but it declined to treat their transfer within a capital improvements bond and loan transaction as a "sale".  PBMM submits the proposed amendment in good faith clarifying its role within the subject bond transaction as supportive of its status as "seller" with standing to assert securities claims under the Act.

## II.  **Conclusion**

In sum, PBMM respectfully requests leave to file an amended complaint as proposed. Granting this request is consistent with the Rule 15 mandate that leave to amend "shall be freely given when justice requires", which as the Second Circuit has explained, is a liberal and permissive standard reflective of the Circuit's strong preference for the resolution of disputes on their merits.

Dated: May 18, 2020

*Respectfully submitted,*

**HERNANDEZ LEE MARTINEZ, LLC**
*Counsel for Plaintiff*
9190 Biscayne Blvd, Suite 204
Miami Shores, Florida 33138
Phone: (305) 842-2100
Facsimile: (305) 842-2105

By: ___ s/ _Jermaine A. Lee_ _____
   **Jermaine A. Lee, Esq.**
   Florida Bar. No.: 0850861
   jlee@hlmlegal.com
   (Admitted *pro hac vice*)

-- and --

**ZARIN & ASSOCIATES, P.C.**
Scott Zarin, Esq.
scottzarin@copyrightrademarkcounsel.com
244 West 102nd Street, #3B
New York, NY 10025
Phone: (212) 580-3131
Facsimile: (212) 580-4393

11