```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
| | |
|---|---|
| PALM BEACH MARTIME MUSEUM, INC.,<br><br>                    Plaintiff,<br><br>-against-<br><br>HAPOALIM SECURITIES USA, INC., a foreign corporation, EDWARD CHAN, PATRICIA AGUIAR, FABIO D'ASCOLA, and BILL BURCKHART,<br><br>                    Defendants. | 19 Civ. 908 (LAP)<br><br>ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Plaintiff Palm Beach Maritime Museum, Inc. ("PBMM")'s motion for leave to amend its complaint, which asserts claims under § 10(b) of the Securities Exchange Act of 1934, Rule 10b-5 promulgated thereunder, and numerous state law claims.[1]  Defendants Hapoalim Securities USA, Inc. ("Hapoalim") and Edward Chan ("Chan" and, collectively, the "Defendants") oppose the motion.[2]

---

[1] (See Plaintiff's Memorandum of Law in Support of its Motion for Leave to Amend Complaint ("Mot."), dated May 18, 2020 [dkt. no. 102]; Plaintiff's Reply to Defendants' Hapoalim Securities USA, Inc. and Edward Chan's Opposition to Plaintiff's Motion for Leave to Amend Complaint ("Reply"), dated July 2, 2020 [dkt. no. 107].)

[2] (See Memorandum of Law by Defendants Hapoalim Securities USA, Inc. and Edward Chan in Opposition to Plaintiff's Motion to Amend the Complaint ("Opp."), dated June 19, 2020 [dkt. no. 104].)  In its original complaint, PBMM also asserted claims against Patricia Aguiar, Fabio D'Ascola, and Bill Burckhart, but has dropped these individuals as defendants in its Proposed Amended Complaint ("PAC").

1

For the reasons discussed below, PBMM's motion to amend is DENIED as to its federal securities law claims and GRANTED as to its state law claims.[3]

## I. Background

The Court assumes basic familiarity with the facts alleged, which the Court recounted at length in its Order granting Defendants' motion to dismiss. (See Memorandum & Order, Apr. 10, 2019 [dkt. no. 92]); Palm Beach Mar. Museum, Inc. v. Hapoalim Scurities USA, Inc., No. 19 CIV. 908 (LAP), 2019 WL 1950139 (S.D.N.Y. Apr. 10, 2019).

To summarize briefly, PBMM is a not-for-profit charter school with its principal place of business in Florida. (Ex. 1 to Mot., Proposed Amended Complaint ("PAC"), dated May 18, 2020 [dkt. no. 102-1] ¶ 10). Defendant Hapoalim is a Delaware corporation with its principal place of business in New York, and Chan was formerly employed by Hapoalim. PBMM entered into an agreement with Hapoalim as underwriter to finance the purchase and development of a property, "Lantana 2". (Complaint ("Compl."), dated May 7, 2018 [dkt. no. 1] ¶¶ 1-2.)

In its original complaint, PBMM alleged that Defendants intentionally misled PBMM regarding the bond purchase agreement it

---

[3] Defendants have reserved their rights to move to dismiss the state law claims under Fed. R. Civ. P. 12(b)(6). (See Opp. at 1.)

entered into in connection with a conduit financing transaction. (See Compl. ¶ 1.)  PBMM asserted that the agreement was premised on material misrepresentations, specifically, that the seller of Lantana 2 had agreed to sell the land for $8 million and allocate $2.5 of that sum to the development of the additional space at Lantana 2. (Compl. ¶ 196.)  Hapoalim and Chan are alleged to have "intentionally and falsely misled the [PBMM's] Board into approving the issuance of the Bond," resulting in the issuance of the bond by PBMM and economic loss by PBMM. (Compl. ¶¶ 196-197.) PBMM further alleged that Burckhart, chairman and secretary of PBMM's board, "stayed quiet" while the other board members approved the bond issuance. (Compl. ¶¶ 272.) Aguiar, a consultant for the project, was alleged to have also "stayed silent" while the board approved the issuance.  (Compl. ¶ 309.) Lastly, PBMM alleged that D'Ascola, the then CFO of Lantana 2's landlord, reinforced the false narrative being represented to the board to induce approval of the bond issuance. (Compl. ¶¶ 344-346.)

On April 10, 2019, this Court granted Defendants' motion to dismiss Plaintiff's federal securities claims under the 1934 Act with prejudice and dismissed Plaintiff's state law claims without prejudice. Palm Beach Mar. Museum, 2019 WL 1950139 (S.D.N.Y. Apr. 10, 2019).  Upon PBMM's appeal, the Court of Appeals vacated this Court's with-prejudice dismissal of PBMM's claims and remanded the case to address whether to grant PBMM leave to amend.  Palm Beach

Mar. Museum, Inc. v Hapoalim Sec. USA, Inc., 810 F. Appx 17 (2d Cir. 2020).  The Court of Appeals found that "[t]he District Court correctly concluded that PBMM was not the issuer of the bonds and could not ground its federal securities fraud claims on that status."  Id. at 20.  Moreover, the Court of Appeals affirmed the Court's order insofar as it dismissed Plaintiff's claim that Plaintiff was a "direct seller of promissory notes to the" public authority that issued the bonds.  Id.  The Court of Appeals observed that Plaintiff raised this argument for the first time in its opposition brief and that the complaint was "bereft of any mention of its issuance, conveyance, or sale of promissory notes and does not allege a violation of the Exchange Act on that basis."  Id.  However, because this Court's order did not state why it denied Plaintiff leave to amend its Complaint, the Court of Appeals remanded the case "to address PBMM's request for leave to cure any deficiency in its Complaint by amendment."  Id. at 21.

**II.  Legal Standard**

Leave to amend should be "freely give[n] when justice so requires," Fed. R. Civ. P. 15(a)(2).  However, "[t]he grant or denial of an opportunity to amend is within the discretion of the District Court".  Foman v. Davis, 371 U.S. 178, 182.  Leave to amend may be denied for good reason including futility, bad faith, undue delay, or undue prejudice towards the opposing party. See Foman, 371 U.S. at 182.

4

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to a Federal Rule of Civil Procedure 12(b)(6)." State St. Glob. Advisors Tr. Co. v Visbal, 431 F Supp 3d 322, 334 (S.D.N.Y. 2020). On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) the movant must show that the non-moving party has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court must treat all factual allegations as true and view them in the non-moving party's favor. DiFolco v MSNBC Cable L.L.C., 622 F.3d 104, 110 (2d Cir. 2010). So long as the complaint contains sufficient facts on its face to state a plausible claim to relief and to put the defendant on notice of the claims against them, a motion to dismiss should not be granted. See Ashcroft v. Iqbal, 556 U.S. 662 (2009); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

### III. Discussion

**1. Amendment of Plaintiff's Federal Securities Claim Would Be Futile**

The PAC asserts claims under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder (the "Federal Securities Claims"). Neither § 10(b) of the Exchange Act nor Rule 10b-5 "expressly creates" a private right of action for securities fraud; however, the Supreme Court recognizes that "'a private right of action is implied under § 10(b).'" Palm

Beach Mar. Museum, Inc., 810 F. App'x at 19 (quoting Janus Capital Grp., Inc. v. First Derivative Traders, 564 U.S. 135, 142). This private right of action is available only to "purchasers or sellers of securities." Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975).

### a. The Notes are not Securities under the Reves test

Amending the complaint would be futile because the PAC fails to cure the pleading deficiencies concerning the status of the promissory notes (the "Notes") tendered to the Public Finance Authority of Wisconsin ("PFA"). Plaintiff claims that the Notes involved in this action are securities under the Reves test and do not bear a strong resemblance to any recognized non-security note. (Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion for Leave to Amend Complaint ("Reply"), dated July 3, 2020 [dkt. no. 107], at 6-8). The family resemblance test from Reves v. Ernst & Young governs the characterization of Notes as securities. 494 U.S. 56 (1990). Under the Reves test, a note with a term of greater than nine months is presumed to be a security unless, upon examination of the note based on four factors, it has a strong resemblance to a list of the non-security instruments identified by the Reves Court. Id. at 65. If a note does not bear a resemblance to any instrument on the non-security list, then a court must decide whether another category of non-security instruments should be added to the list. Id. at 67.

6

The four <u>Reves</u> are: (1) the motivations that would cause a reasonable seller and buyer to enter into the transaction; (2) the plan of distribution of the instrument; (3) the reasonable expectations of the investing public; and (4) if some factor significantly reduces the risk of the instrument, like the existence of another regulatory scheme, rendering the application of federal securities laws unnecessary. <u>Id.</u> at 66-67. The list of non-security instruments is as follows:

> the note delivered in consumer financing, the note secured by a mortgage on a home, the short-term note secured by a lien on a small business or some of its assets, the note evidencing a 'character' loan to a bank customer, short-term notes secured by an assignment of accounts receivable, a note which simply formalizes an open-account debt incurred in the ordinary course of business (particularly if, as in the case of the customer of a broker, it is collateralized) . . . [and] notes evidencing loans by commercial banks for current operations.

<u>Id.</u> at 65.

As to the first factor, the motivation for the Plaintiff to borrow the funds was for the "acquisition & expansion of an existing facility." (Ex. A to PAC [dkt. no. 102-1 at 36], at 1.) "If the note is exchanged to facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash-flow difficulties, or to advance some other commercial or consumer purpose. . . the note is less sensibly described as a security." <u>Reves</u>, 494 U.S. at 66 (quotations omitted). Here, the Plaintiff borrowed the funds to purchase school buildings,

7

and secured the loan with a mortgage on the properties.  (Ex. J. to PAC [dkt. no. 102-1 at 96].)  The purchase of a school building does not fall within the scope of "rais[ing] money for the general use of a business enterprise or to finance substantial investments" where "the buyer is interested primarily in the profit the note is expected to generate," making the instrument more likely to be a security.  Id. at 66.  Because the purpose of borrowing the funds was to purchase its properties, a commercial purpose, and the PAC does not make clear PFA's interest in the Notes, this factor points towards the Notes not being securities.  See Eagle Trim, Inc. v. Eagle-Picher Industries, Inc., 205 F. Supp. 2d 746 (E.D. Mich. 2002).

In considering the plan of distribution, Reves requires a determination of whether the instrument is for "common trading for speculation or investment."  Reves 494 U.S. at 66.  There is no assertion here that the Notes were offered and sold to a broad segment of the public; they were simply "promise[s] to repay money loaned to facilitate the purchase of assets" for which there was no plan of distribution.  Eagle Trim, 205 F. Supp. 2d at 752.  While the Plaintiff asserts that the Notes were "undoubtedly an integral part of a conduit financing transaction structured to attract municipal bond investors," (Reply at 7), there is no allegation indicating that the Notes here were intended for common

trading. The second Reves factor therefore points to the Notes not being securities.

The third factor asks if the "public's reasonable perceptions" point to the notes being securities. Reves 494 U.S. at 68. The fundamental essence of a security is its character as an investment. Id. As the Plaintiff recites in the PAC, the Offering Memorandum refers to the exchange as an "investment." (PAC ¶¶ 75-80; Ex. J. to PAC [dkt. no. 102-1 at 96].) However, the wording of a document delivered to the three investors that acquired the bonds has little impact upon the public expectations for the Notes. Like the Note in Singer, there does not appear to be any public expectation that the promissory note here would be "traded or speculated in as a security." Singer v. Livoti, 741 F. Supp. 1040, 1050 (S.D.N.Y. 1990). This factor points towards the Notes not being securities.

The final factor of Reves asks whether there is a risk-reducing factor to suggest the Notes are not securities. Reves 494 U.S. at 69. Here, the Notes are secured by a mortgage and by guarantees of an associated entity. (Ex. J. to PAC [dkt. no. 102-1 at 96].) As with the instrument in Singer, this instrument is "one of the many commonplace and successful conventional mortgage loan transactions between private lenders and private borrowers," and the "fact that a note is collateralized by tangible property has been recognized by the Supreme Court as a risk reducing

9

factor," which suggests an investment is not a security. Singer, 741 F. Supp. At 1050. This factor clearly weighs in favor the Notes not being securities.

In sum, the analysis under Reves, and especially the fact that the Notes are secured by a mortgage, compel a finding that the Notes bear family resemblance to a note secured by a mortgage on a home, a category of instruments included in the list of non-securities from Reves. See 494 U.S. Accordingly, the Court finds that the Notes are not securities, and amending the complaint to reinstate Plaintiff's Federal Securities Claims would be futile.

### b. PBMM was not a "Seller" of the Notes

Amendment would be futile as to Plaintiff's Federal Securities Claims for the additional reason that Plaintiff is not a buyer or seller of securities (nor is Plaintiff a constructive buyer or seller of securities). There are three relevant parties in the Bond Purchase Agreement: Hapoalim is "the Underwriter," Plaintiff is "the Borrower," and the PFA, a unit of the government of the State of Wisconsin, is "the Issuer." (Ex. 1 to Defendant Hapoalim Securities USA, Inc.'s Memorandum in Support of its Motion to Dismiss Complaint ("Bond Purchase Agreement"), dated June 5, 2018 [dkt. no. 8], at 24.) The "Purchase and Sale" section of the Bond Purchase Agreement states that "the Underwriter hereby agrees to purchase, and the Issuer agrees to sell" the bonds. Id. at 2. It states further that the "proceeds of the Bonds shall be used to

fund a loan to the Borrower . . . pursuant to the terms of a Loan Agreement" between the Issuer and Borrower.  Id.  Stated plainly: Hapoalim would purchase bonds from the Public Finance Authority. The proceeds of those bonds would then be loaned to the Plaintiff, secured by a mortgage and Security Agreement.  The Plaintiff would then repay the Public Finance Authority.

The substance of the Bond Purchase Agreement plainly shows that the Underwriter and Issuer were the parties buying and selling the Notes.  The Plaintiff underscores this point in the Amended Complaint, alleging that the Bonds "were initially sold to Hapoalim in its underwriting capacity" as contemplated in the Limited Offering Memorandum. (PAC ¶ 78.)  Here, Plaintiff makes the same argument regarding Realtek as it did in opposition to Defendant's motion to dismiss, which this Court previously dismissed on the same grounds.  Palm Beach Mar. Museum, Inc., 2019 WL 1950139, at *3 ("Plaintiff had no obligation to sell or purchase securities. In Realtek, the relevant language of the agreement said that plaintiff or a related company, 'would be the issuer of rated securities that would be purchased.'  There is simply no similar contractual language that contemplates an analogous issue and purchase by the Plaintiff here.") (citing Realtek, 939 F. Supp. at 582).  In the PAC, Plaintiff asserts that this Court mistook its role in the transaction and that because Plaintiff issued the notes it "is indeed a seller with standing to assert federal securities

11

claims under the Act." (Mot. at 9-10.) Realtek once again offers the Plaintiff no support. In Realtek, the court noted that "a two-year note an insurance company receives for its $10 million loan to a corporation is almost certainly not a security. But if the insurance company then causes the" note to be divided up and sold to the public those notes are "certainly securities." Realtek Industries, Inc. v Nomura Securities, 939 F. Supp. 572, 580-81 (N.D. Ohio 1996). Here, the notes are simply "two long-term promissory notes in the amount of the Bonds to the Authority." (PAC ¶ 79.) They evidence obligations to repay a loan and are were not intended to be offered for sale to a broad segment of the public. In light of Realtek, both the form and substance of the transaction here make clear that notes issued by the Plaintiff were not securities.

### 2. State Law Claims

Plaintiff's PAC asserts state law claims against Hapoalim and/or Chan for (1) securities fraud in violation of Fla. Stat. § 717.301; (2) common law fraud/fraudulent misrepresentation; (3) fraudulent omission; (4) negligent misrepresentation; (5) aiding and abetting breach of fiduciary duties; (6) breach of the implied covenant of good faith; and (7) negligent supervision (together, the "State Law Claims"). (PAC at 21-33.)

Under 28 U.S.C. § 1332, federal diversity jurisdiction exists for civil actions where the dispute is between citizens of

different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.  The citizenship of a natural person for the purposes of diversity jurisdiction is determined by his domicile. Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828 (1989). The citizenship of a corporation for the purposes of diversity jurisdiction is determined by its state of incorporation and the state where it has its principal place of business.  28 U.S.C. §1332(c)(1).  In dismissing Plaintiff's federal law claims, over which it had original jurisdiction, the Court declined to exercise supplemental jurisdiction over Plaintiff' State Law Claims (which, of course, were brought by a Florida-not-for-profit corporation against several defendants, including Florida-domiciled defendants.)  Palm Beach Mar. Museum, 2019 WL 1950139, at *5.

Here, however, the State Law Claims asserted in Plaintiff's proposed Amended complaint meet the requirements of diversity jurisdiction.   Plaintiff  is  a  Florida  corporation  with  its principal place of business in Florida. (PAC ¶ 10.)  Defendant Hapoalim is alleged to be incorporated in Delaware with a principal place of business in New York.  (Id. ¶ 11.)  Defendant Chan is a domiciliary of a state other than Florida.  (Id. ¶ 12.)  The PAC seeks relief in respect to a bond offering exceeding $24 million. (PAC ¶1.)  Because the Plaintiff and the defendants named in Plaintiff's Proposed Amended Complaint are citizens of different states and the amount of controversy exceeds $75,000, diversity

13

jurisdiction is proper here.  Accordingly, Plaintiff may amend its complaint to reassert its state claims against the defendants named in the PAC.

IV. Conclusion

For the foregoing reasons, PBMM's Motion to Amend its Complaint (dkt. no. 102) is DENIED in part and GRANTED in part. Plaintiff's motion insofar as it seeks to amend its complaint to reinstate its Federal Securities Claims is DENIED, and Plaintiff's motion to amend its complaint to reassert its State Law Claims is GRANTED.

Plaintiff shall file its amended complaint no later than March 31, 2021.

**SO ORDERED.**

Dated:    New York, New York
          March 16, 2021

_____
LORETTA A. PRESKA
Senior United States District Judge